**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **1025 CANAL STREET, LLC** | **CIVIL ACTION NO.  2:20-cv-03312** |
| **VERSUS** | |
| **CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON SUBSCRIBING TO POLICY NUMBER AMR-66147, INDIAN HARBOR INSURANCE COMPANY, QBE SPECIALTY INSUANCE COMPANY, STEADFAST INSURANCE COMPANY, GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA, UNITED SPECIALTY INSURANCE COMPANY, LEXINGTON INSURANCE COMPANY, SAFETY SPECIALTY INSURANCE COMPANY, HDI GLOBAL SPECIALTY SE, AND OLD REPUBLIC UNION INSURANCE COMPANY** | **CHIEF JUDGE NANETTE JOLIVETTE BROWN**<br><br>**MAGISTRATE JUDGE DONNA PHILLIPS CURRAULT** |

## ANSWER TO PETITION FOR DAMAGES AND AFFIRMATIVE DEFENSES

Defendants, Certain Underwriters at Lloyd's, London Severally Subscribing to Policy Number AMR-66147 and HDI Global Specialty SE (collectively "Insurers"), by and through counsel, without waiving any affirmative defenses or objections herein, including, but not limited to, those defenses available under Federal Rules of Civil Procedure Rules 8 and 12 and without waiving Insurers' right to seek dismissal and compel arbitration of this dispute pursuant to the arbitration clause contained in the subject insurance policy, which requires all matters in difference between the parties to be submitted to arbitration, hereby respond to the Petition for Damages, as follows.

**FIRST DEFENSE**

Insurers assert that there is a valid arbitration provision that falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (also known as the "Convention"). As further explained below, some of the members of Certain Underwriters at Lloyd's, who are parties to the Policy at issue, are not citizens of the United States, which grants this Court original jurisdiction pursuant to 9 U.S.C. §§ 202, 203 and 205, which jurisdiction has been triggered by Underwriters' Notice of Removal. Similarly, HDI Global Specialty SE is not a citizen of the United States, which further grants this Court original jurisdiction under the same provisions. All claims in the litigation "relate to" the dispute subject to arbitration, and arbitration has been demanded under the Policy. Insurers expressly reserve any and all rights pursuant to the insurance policy at issue, including but not limited to Insurers' right to seek a stay of the litigation and to compel arbitration of this dispute.

**SECOND DEFENSE**

Insurers further assert that there is a valid choice of law provision in the Policy at issue, which calls for application of New York law, under which the arbitration provision noted above is applicable to Insurers. All claims in the litigation "relate to" the dispute subject to arbitration, and arbitration has been demanded under the Policy. Insurers expressly reserve any and all rights pursuant to the insurance policy at issue, including but not limited to Insurers' specifically preserve and give notice of their right to seek a stay of the litigation and to compel arbitration of this dispute.

## THIRD DEFENSE

**AND NOW,** and in the alternative, Insurers respond to the specific allegations of the Petition for Damages by denying each and every allegation therein except as specifically admitted as follows:

1.

The allegations contained in Paragraph 1 do not require a response; however, to the extent a response is required, allegations are denied for lack of sufficient information upon which to justify a belief therein with respect to Plaintiff's principal place of business.

2.

The allegations contained in Paragraph 2 do not require a response; however, to the extent a response is required, allegations are denied for lack of sufficient information upon which to justify a belief therein with respect to Plaintiff's legal status or principal place of business.

3.

The allegations contained in Paragraph 3 are denied as stated, except to admit Certain Underwriters at Lloyd's London Subscribing to Policy No. AMR-66147 ("Underwriters") consist, in part, of companies organized under the laws and with their principal place of business in England. Defendant HDI Global Specialty SE ("HDI") admits it is organized under the laws of and has its principal place of business in Germany. The Insurers herein further admit they are authorized to insure risks in Louisiana on a surplus lines basis. The remaining allegations as to the other defendants do not require a response.

4.

The allegations in Paragraph 4 are denied for lack of sufficient information upon which to justify a belief therein, except to admit that the property at issue in this litigation is located at 1019-1025 Canal Street, New Orleans, Louisiana.

5.

The allegations in Paragraph 5 are denied as stated, except to admit that the Insurers subscribed to and/or issued a single document to Plaintiffs, evidencing the respective shares of all parties to the risk ("the Policy"), the terms, conditions and limitations of which are fully pled as if copied herein *in extenso*.

6.

The allegations in Paragraph 6 are denied as stated, except to admit that the Insurers subscribed to and/or issued a single document to Plaintiffs, evidencing the respective shares of all parties to the risk ("the Policy"), the terms, conditions and limitations of which are fully pled as if copied herein *in extenso*.

7.

The allegations in Paragraph 7 are denied as stated, except to admit that the Policy is the best evidence of its contents, and its terms, conditions and limitations are fully pled as if copied herein *in extenso*.

8.

The allegations in Paragraph 8 are denied as stated, except to admit that the Policy is the best evidence of its contents, and its terms, conditions and limitations are fully pled as if copied herein *in extenso*.

9.

The allegations in Paragraph 9 are denied as stated, except to admit that the Insurers subscribed to and/or issued a single document to Plaintiffs, evidencing the respective shares of all parties to the risk ("the Policy"), the terms, conditions and limitations of which are fully pled as if copied herein *in extenso*.

10.

The allegations in Paragraph 10 are denied as stated, except to admit that the Policy is the best evidence of its contents, and its terms, conditions and limitations are fully pled as if copied herein *in extenso*.

11.

Upon information and belief, the allegations contained in Paragraph 11 are admitted.

12.

Upon information and belief, the allegations contained in Paragraph 12 are admitted.

13.

Upon information and belief, the allegations contained in Paragraph 13 are admitted.

14.

Upon information and belief, the allegations contained in Paragraph 14 are admitted.

15.

The allegations contained in Paragraph 15 are denied.

16.

The allegations contained in Paragraph 16 are denied as stated; upon information and belief, the Property was ordered demolished to allow for the safe demolition of the collapsed 1031 Canal Street.

17.

The allegations contained in Paragraph 17 are denied as stated; upon information and belief, the Property was ordered demolished to allow for the safe demolition of the collapsed 1031 Canal Street.

18.

The allegations contained in Paragraph 18 are denied for lack of sufficient information upon which to justify a belief therein.

19.

The allegations contained in Paragraph 19 are denied as stated, except to admit that Plaintiff advised the Insurers of a claim, which was adjusted under the complete terms, conditions and limitations of the Policy, all of which are pled as if copied herein *in extenso*.

20.

The allegations contained in Paragraph 20 are denied as stated, except to admit that Plaintiff advised the Insurers of a claim, which was adjusted under the complete terms, conditions and limitations of the Policy, all of which are pled as if copied herein *in extenso*.

21.

The allegations contained in Paragraph 21 are denied as stated, except to admit that Plaintiff advised the Insurers of a claim, which was adjusted under the complete terms, conditions and limitations of the Policy, all of which are pled as if copied herein *in extenso*.

22.

The allegations contained in Paragraph 22 are denied as stated; the report and findings of the engineer are the best evidence of its contents and are expressly pled as if copied herein *in extenso*.

23.

The allegations contained in Paragraph 23 are denied for lack of sufficient information upon which to justify a belief therein.

24.

The allegations contained in Paragraph 24 are denied as stated as the documents identified are the best evidence of their contents.

25.

The allegations contained in Paragraph 25 are denied as stated, except to admit that Plaintiff advised the Insurers of a claim, which was adjusted under the complete terms, conditions and limitations of the Policy, all of which are pled as if copied herein *in extenso*.

26.

The allegations contained in Paragraph 26 are denied as stated, except to admit that Plaintiff advised the Insurers of a claim, which was adjusted under the complete terms, conditions and limitations of the Policy, all of which are pled as if copied herein *in extenso*.

27.

The allegations contained in Paragraph 27 are admitted as no sums were found to be due under the Policy arising out of the Loss.

28.

The allegations contained in Paragraph 28 are denied.

29.

The allegations contained in Paragraph 29 are denied.

30.

The allegations contained in Paragraph 30 are denied for lack of sufficient information upon which to justify a belief therein.

31.

The allegations contained in Paragraph 31 are denied.

32.

The allegations contained in Paragraph 32 are denied as stated, and in further answering, the Insurers expressly plead the complete terms, conditions and limitations of the Policy as if copied herein *in extenso*.

33.

The allegations contained in Paragraph 33 are denied.

34.

The allegations contained in Paragraph 34 are denied.

35.

The allegations contained in Paragraph 35 do not require a response; however, to the extent a response is required, allegations are denied.

36.

The allegations contained in Paragraph 36 do not require a response.

37.

The allegations contained in Paragraph 37 do not require a response.

38.

The allegations contained in Paragraph 38 are denied as the Policy requires all matters in dispute be sent to arbitration in New York under New York law.

39.

The allegations contained in Paragraph 39 do not require a response; however, to the extent a response is required, the allegations are denied.

40.

The allegations contained in Paragraph 40 are denied as stated.

41.

The allegations contained in Paragraph 41 are denied.

42.

The allegations contained in Paragraph 42 are denied.

43.

The allegations contained in Paragraph 43 are denied.

44.

The allegations contained in Paragraph 44 do not require a response; however, to the extent a response is required, the allegations are denied.

45.

The allegations contained in Paragraph 45 are denied.

46.

The allegations contained in Paragraph 46 are denied.

47.

The allegations contained in Paragraph 47 are denied.

48.

The allegations contained in Paragraph 48 are denied.

49.

The allegations contained in Paragraph 49 are denied.

50.

The allegations contained in Paragraph 50 are denied.

51.

The allegations contained in Paragraph 51 are denied.

52.

The allegations contained in Paragraph 52 are denied.

53.

The allegations contained in Paragraph 53 are denied.

54.

The allegations contained in Paragraph 54 are denied.

## JURY DEMAND

The paragraph titled JURY DEMAND requires no response; however, to the extent a response is required, the allegations are denied as the Policy requires all matters in dispute be sent to arbitration in New York and under New York law.

## AFFIRMATIVE DEFENSES

**AND NOW**, Insurers further respond as follows:

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are limited to the terms, conditions and limitations of the Policy, including but not limited to the Policy's arbitration provision:

## SECTION VII – CONDITIONS

C.    ARBITRATION CLAUSE:   All matters in difference between the Insured and the Companies (hereinafter referred to as "the parties") in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out.

Unless the parties agree upon a single Arbitrator within thirty days of one receiving a written request from the other for Arbitration, the Claimant (the party requesting Arbitration) shall appoint his Arbitrator and give written notice thereof to the Respondent. Within thirty days of receiving such notice, the Respondent shall appoint his Arbitrator and give written notice thereof to the Claimant, failing which the Claimant may nominate an Arbitrator on behalf of the Respondent.

Should the Arbitrators fail to agree, they shall appoint, by mutual agreement only, an Umpire to whom the matter in difference shall be referred.  If the Arbitrators cannot agree to an Umpire, either may request the selection be made by a judge of a New York court.

Unless the parties otherwise agree, the Arbitration Tribunal shall consist of persons employed or engaged in a senior position in Insurance underwriting or claims.

The Arbitration Tribunal shall have power to fix all procedural rules for the holding of the Arbitration including discretionary power to make orders as to any matters which it

may consider proper in the circumstances of the case with regard to pleadings, discovery, inspection of documents, examination of witnesses and any other matter whatsoever relating to the conduct of the Arbitration and may receive and act upon such evidence whether oral or written strictly admissible or not as it shall in its discretion think fit.

Each party will pay its chosen Arbitrator, and also bear the other expenses of the Arbitration and Umpire equally.

The seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply the law of New York as the proper law of this insurance.

The Arbitration Tribunal may not award exemplary, punitive, multiple, consequential, or other damages of a similar nature.

A decision agreed to by any two members of the Arbitration Tribunal shall be binding. The award of the Arbitration Tribunal shall be in writing and binding upon the parties who covenant to carry out the same. If either of the parties should fail to carry out any award the other may apply for its enforcement to a court of competent jurisdiction in any territory in which the party in default is domiciled or has assets or carries on business.

COMPASS 04 18, P. 24 of 42 (See Doc. 1-2, Exhibit A to Original Petition).

Based on the above, Plaintiff's claims are subject to mandatory arbitration under the Policy.

## SECOND AFFIRMATIVE DEFENSE

To the extent Plaintiffs seek to recover under Louisiana law, the claims must fail due to the presence of the New York Choice of Law provision cited above.

## THIRD AFFIRMATIVE DEFENSE

The Policy contains numerous provisions, all of which may limit, restrict or prohibit Plaintiffs' claims, including but not limited to the following:

## COMMERCIAL PROPERTY COMPASS FORM

In consideration of the premium charged, this policy covers for direct physical loss of or damage to the Covered Property caused by a covered cause of Loss occurring during the policy period. Coverage shall be subject to the terms, conditions, definitions, exclusions, limitations and provisions contained herein.

### SECTION I – INSURED, ADDITIONAL INTERESTS & COVERAGE TERRITORY

Terms which appear in boldface type have special meaning *See* Section VIII. POLICY DEFINITIONS.

A.  NAMED INSURED: First Named Insured (as shown in the Declarations) and/or its affiliated and subsidiary companies and/or corporations as now exist or may hereafter be constituted or acquired including their interests as may appear in partnerships or joint ventures which the Insured is responsible or legally obligated to insure.

* * *

**COMPASS SUPPLEMENTAL DECLARATIONS**

This Compass Supplemental Declarations shall be attached to and form a party of the Compass 04 18 Form.

A.  LIMIT OF LIABILITY ("Policy Limit"):  The total maximum liability for all insurance companies and Lloyd's of London, London England (all hereinafter referred to as the "Companies") in any one **Occurrence** as a result of all covered loss or damage regardless of the number of **Locations**, coverages, or perils insured under this Policy shall not exceed the lesser of: 1. (a. – f., as indicated by an 'X'); OR 2.:

1.  a.  <u>X</u>  As respects each **Location** insured by this Policy: <u>100.00%</u> of the total combined stated values for all categories of Covered Property and Time Element exposures shown for that **Location** on the Statement of Values or other documentation on file with the Program Manager for the Companies, as stated on the Policy Declaration page (hereinafter referred to as the "Program Manager").

* * *

B.  SUBLIMITS OF LIABILITY:  Sublimits of Liability stated below are included within and not in addition to the Limit of Liability shown in Paragraph A., above. These Sublimits of Liability and the specified limits of liability contained in the forms, endorsements and extensions attached, if any, are per **Occurrence**, unless otherwise indicated.

If the words "NOT COVERED" are shown, instead of a limit, sublimit amount or number of days, or if a specified amount or number of days is not shown corresponding to any coverage or Covered Cause of Loss, then no coverage is provided for that coverage or Covered Cause of Loss.

1.  **Earth Movement**

   a.  $NOT COVERED   Annual Aggregate

      Subject to the Annual Aggregate Limit for all **Earth Movement** shown in B.1.a above:

      b.   $NOT COVERED    Annual Aggregate for all **Earth Movement** in California, Alaska and Hawaii, combined.

      c.   $NOT COVERED    Annual Aggregate for **Pacific Northwest States,** combined.

      d.   $NOT COVERED    Annual Aggregate for **New Madrid Earthquake Zone Counties,** combined.

* * *

However, the Sublimits below (B.4. – B.36.) shall be considered sublimits within the above applicable covered peril sublimits (B.1. – B.3.)

5.     Civil or Military Authority:   30 Days; but in no event will the Companies pay more than $1,000,000.

* * *

18.    Ingress/Egress Coverage:   30 Days; but in no event will the Companies pay More than $250,000.

* * *

24.    Ordinance or Law:

      a.    Coverage A:   Included in **Building** Limit.
      b.    Coverage B:   20% of the scheduled **Building** value, not to exceed $5,000,000.
      c.    Coverage C:   Included with Coverage B.
      d.    Coverage D:   Included in the Time Element (if covered).

* * *

33.    Time Element Monthly Limitation:   1/12 Monthly ; applicable to all Time Element coverages, except those that have a sublimit in this Paragraph B.

* * *

C.    MAXIMUM AMOUNT PAYABLE:  In the event of a Covered Cause of Loss hereunder, the total liability of the Companies shall be limited to the least of the following:

1.     The actual adjusted amount of loss, less applicable deductible(s), or

* * *

D.    DEDUCTIBLE:  Each claim for loss or damage under this policy shall be subject to a per **Occurrence** deductible amount of:

1.     $10,000 Property Damage & Time Element (if covered), combined; OR

* * *

## SECTION II – COVERED CAUSES OF LOSS

A.  COVERED CAUSES OF LOSS:  This Policy insures against all risks of direct physical loss or damage to Covered Property, except as excluded.

B.  EXCLUSIONS:  The Companies do not insure for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss or damage. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area:

* * *

6.  Delay, loss of market, or loss of use.

7.  Indirect, remote, or consequential loss or damage.

* * *

10.  Faulty workmanship, material, construction, installation, or design from any cause; or faulty planning, zoning, development, surveying or siting; all unless physical damage not excluded by this Policy ensues, in which event, this Policy will cover only such resulting damage.

* * *

12.  Deterioration, depletion, rust, corrosion, erosion, wet or dry rot, decay, evaporation, leakage, wear and tear, animal, insect or vermin damage, inherent vice or latent defect, shrinkage or change in color, flavor, texture or finish, extremes or changes of temperature damage or changes in relative humidity damage, all whether atmospheric or not; all unless physical damage not excluded by this Policy results, in which event, this Policy shall cover only such resulting damage.

13.  Settling, cracking, shrinking, bulging, or expansion of pavements, paved surfaces, walkways, drainage systems or roadways, foundations, walls, floors, or ceilings; all unless physical damage not excluded by this Policy results, in which event, this Policy will cover only such resulting damage.

14.  Lack of incoming electricity, fuel, water, gas, steam, refrigerant, or outgoing sewerage, or incoming or outgoing data or telecommunications, all of which are caused by an **Occurrence** away from the **Location**(s) insured under this Policy, unless specifically provided herein and only to the extent provided herein.

15. Costs, expenses, fines or penalties incurred or sustained by or imposed on the Insured at the order of any government agency, court or other authority arising from any cause whatsoever.

* * *

18. Loss or damage in the form of, caused by, arising out of, contributed to, or resulting from **Fungus, Mold(s), Mildew, Spores or Yeast**; or any spores or toxins created or produced by or emanating from such **Fungus, Mold(s), Mildew, Spores or Yeast.**

    However, this exclusion shall not apply provided the Insured establishes that the fungus, mold(s), mildew, spores or yeast is a direct result of a covered loss from a **Defined Cause of Loss** or **Flood** (provided **Flood** is a covered peril) and provided this loss is reported to the Companies within twelve (12) months from the expiration date of the policy. The Companies' liability shall then be limited to the sublimit stated elsewhere.

* * *

20. Loss or damage arising out of:

    a. A **building** or any part of a **building** that is in danger of falling down or caving in,

    b. Any part of a **building** that has separated from another part of the **building**, or

    c. A **building** or any part of a **building** that is standing which shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

    However, the Companies do cover loss or damage arising from Collapse.

* * *

26. Loss or damage by rain, snow, or dust, whether driven by wind or not, to the interior of any **building** or structure, or the property inside the **building** or structure, unless the **building** or structure first sustains wind or hail damage to its roof or walls through which the rain, snow, sand or dust enters. The above exclusion shall not apply to loss or damage caused by or resulting from the thawing of snow, sleet or ice on the **Building** or structure (also known as ice damming).

27. Seizure or destruction of property by order of governmental authority. However, coverage is provided for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire is a Covered Cause of Loss.

* * *

33.     Pre-existing Damage:  This policy shall exclude any loss or damage directly or indirectly caused by, resulting from or contributed to, any pre-existing **building** damage at the time of this Policy's inception or attachment of coverage.  This exclusion shall not apply:  a) upon the substantial completion or repair or reconstruction of the damaged **building**; or b) if the affected **building** is a renewal of an expiring policy written by the Program Manager.

34.     Loss or damage arising out of any peril for which the words NOT COVERED or for which an amount is not shown in the Compass Supplemental Declarations, Subparagraph B.

        If Earth Movement is NOT COVERED, this policy shall still cover resulting Fire, Explosion or Sprinkler Leakage, provided Fire, Explosion or Sprinkler Leakage is a Covered Cause of Loss.

        If Flood is NOT COVERED, this policy shall still cover resulting Fire or Explosion, provided Fire or Explosure is a Covered Cause of Loss.

## SECTION III – COVERED PROPERTY

* * *

B.      PROPERTY EXCLUDED:   This Policy does not insure against loss or damage to:

* * *

2.      Air, **Land,** land values, and any substance in or on **Land**, or any alteration to the natural condition of the **Land**; However, this exclusion does not apply to the cost of reclaiming, restoring or repairing **Land,** provided the loss is form a **Defined Cause of Loss.** However, this exclusion for all causes of loss shall still apply to golf course: fairways; greens; tees; rough areas; out-of-bound areas; sand traps; and driving ranges.

* * *

9.      Underground mines or mining shafts and any related mining property and equipment while underground, or wells;

* * *

## SECTION IV – VALUATION

Except as otherwise provide in this Paragraph, adjustment of loss or damage under this Policy shall be valued at the cost to repair or replace (whichever is less) at the time and place of the loss with materials of like kind and quality, without deduction for depreciation and obsolescence. The Insured may elect to rebuild on another site, provided that, such rebuilding does not increase the amount of loss or damage that would otherwise be payable to rebuild at the same site. However, if the property is not repaired, rebuilt or replaced as soon as reasonably possible after the loss or

damage, the value of the property will be determined on an **Actual Cash Value** basis. In the event the Insured elects to have the loss or damage settlement on an **Actual Cash Value** basis, the Insured may still make a claim on a replacement cost basis, provided the Insured notifies the Companies within 180 days after the loss or damage.

Unless otherwise endorsed hereon, the property, as described below, will be valued as follows:

* * *

N.    Historic Building Replacement Cost:   As respects building that are declared and designated by a local, state or federal authority to be of historical significance or of historic value, such rebuilding, repairing or replacement shall be with material, workmanship, processes, technologies and designs publicly available with the current marketplace that most closely resemble those that existed before the loss or damage occurred and are based on the most reasonable cost available at the time the loss occurred, and shall not include the cost of creating outdated, archaic or antiquated materials, workmanship, processes, technologies or designs. In no event shall the loss exceed the scheduled limit on the damaged Building.

O.    For all other property:   At replacement cost if actually replaced; otherwise, the **Actual Cash Value,** but not to exceed the cost to repair or replace the property with material of like kind and quality.

### SECTION V – TIME ELEMENT COVERAGE
### GROSS EARNINGS

This Policy is extended to cover the actual loss sustained by the Insured during the Period of Interruption directly resulting from a Covered Cause of Loss to Covered Property.

* * *

C.    ADDITIONAL TIME ELEMENT COVERAGES

* * *

6.    INTERRUPTION BY CIVIL OR MILITARY AUTHORITY:   This Policy is extended to cover the actual loss sustained during the period of time when access to the Insured's covered **Location** is prohibited by an order of civil or military authority, provided that such order is a direct result of a Covered Cause of Loss to real property not insured hereunder.  The insured physical loss or damage must occur within five (5) statute miles from the Insured's covered **Location** in order for coverage to apply.  Such period of time begins with the effective date of the order of civil or military authority and ends when the order expires, but no later than the number of days shown elsewhere.

With respect to Additional Time Element Coverages 6. & 7., if a Covered Cause of Loss results in coverage under both Additional Time Element Coverages, the

Companies will only pay for loss under one of the two Additional Time Element Coverages, whichever the First Named Insured selects.

7.      INGRESS & EGRESS:  This Policy is extended to cover the actual loss sustained during the period of time when ingress to or egress from the Insured's covered Location is prohibited as a direct result of a Covered Cause of Loss to real property not insured hereunder.  The insured physicial loss or damage must occur within five (5) statute miles from the Insured's covered **Location** in order for coverage to apply.  Such period of time begins on the date that ingress to or egress from real or personal property is prohibited and ends when ingress or egress is no longer prohibited, but no later than the number of days shown elsewhere.

With respect to Additional Time Element Coverages 6. & 7., if a Covered Cause of Loss results in coverage under both Additional Time Element  Coverages, the Companies will only pay for loss under one of the two Additional Time Element Coverages, whichever the First Named Insured selects.

\* \* \*

E.      TIME ELEMENT MONTHLY LIMITATION OF INDEMNITY:  The Companies shall not be liable for more than the Monthly Limitation of Indemnity shown elsewhere.  This Monthly Limitation Of Indemnity shall apply to all Time Element coverages, except thos that have a sublimit.

Time Element Monthly Limitation means the most the Companies will pay monthly for a Time Element loss sustained b the Insured during the Period of Interruption directly resulting from a Covered Cause of Loss to Covered Property.  This Monthly Limitation of Indemnity is payable for each period of 30 consecutive days after the beginning of the Period of Interruption and is calculated by multiplying the schedule Time Element value by the fraction shown elsewhere.

## SECTION VI – ADDITIONAL COVERAGES

The following additional coverages are subject to the terms and conditions of this Policy, including the deductibles and sublimits of liability correspondence to each such additional coverage shown in Section I. These sublimits are part of, and not in addition to sublimits and limits of liability of this  Policy, including, but not limited to, the **Earth Movement, Flood,** or **Named Storm** Sublimits of Liability provided herein, if applicable.

\* \* \*

L.      ORDINANCE OR LAW:  In the event of direct physical loss or damage under this Policy that results in the enforcement of any law, ordinance, governmental directive or standard in effect at the time of loss or damage regulating the construction, repair or use and occupancy of the property, the Companies shall pay:

1.   Coverage A:  For the loss in value of the undamaged portion of the building as a consequence of enforcement of an ordinance or law that requires demolition of undamaged parts of the same building.

2.   Coverage B:  For the cost to demolish and clear the site of undamaged parts of the same building, as a consequence of enforcement of an ordinance or law that requires demolition of such undamaged property.

3.   Coverage C:  For the increased cost of repair or replacement of the damaged and undamaged Building on the same or another site, limited to the cost that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site. However, these Companies shall not be liable for any increased cost of construction loss unless the damaged property is actually rebuilt or replaced.

4.   Coverage D:  For the additional loss in Time Element (if covered), that the Insured sustains during the increased period of suspension of operations caused by or resulting from a consequence of enforcement of an ordinance or law.

*  *  *

The Companies shall not be liable for any cost of demolition or increased cost of reconstruction, repair, debris removal or loss of use (including Time Element) necessitated by the enforcement of any law or ordinance regulating any form of contamination or pollution.

## SECTION VII – CONDITIONS

*  *  *

C.   ARBITRATION CLAUSE:  All matters in difference between the Insured and the Companies (hereinafter referred to as "the parties") in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out.

Unless the parties agree upon a single Arbitrator within thirty days of one receiving a written request from the other for Arbitration, the Claimant (the party requesting Arbitration) shall appoint his Arbitrator and give written notice thereof to the Respondent. Within thirty days or receiving such notice, the Respondent shall appoint his Arbitrator and give written notice thereof to the Claimant, failing which the Claimant may nominate an Arbitrator on behalf of the Respondent.

Should the Arbitrators fail to agree, they shall appoint, by mutual agreement only, an Umpire to whom the matter in difference shall be referred.  If the Arbitrators cannot agree to an Umpire, either may request the selection be made by a judge of a New York court.

Unless the parties otherwise agree, the Arbitration Tribunal shall consist of persons employed or engaged in a senior position in Insurance underwriting or claims.

The Arbitration Tribunal shall have power to fix all procedural rules for the holding of the Arbitration including discretionary power to make orders as to any matters which it may consider proper in the circumstances of the case with regard to pleadings, discovery, inspection of documents, examination of witnesses and any other matter whatsoever relating to the conduct of the Arbitration and may receive and act upon such evidence whether oral or written strictly admissible or not as it shall in its discretion think fit.

Each part will pay its chosen Arbitrator, and also bear the other expenses of the Arbitration and Umpire equally.

The seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply the law of New York as the proper law of this insurance.

The Arbitration Tribunal may not award exemplary, punitive, multiple or other damages of a similar nature.

A decision agreed to by any two members of the Arbitration Tribunal shall be binding. The award of the Arbitration Tribunal shall be in writing and binding upon the parties who covenant to carry out the same. If either of the parties should fail to carry out any award the other may apply for its enforcement to a court of competent jurisdiction in any territory in which the party in default is domiciled or has assets or carries on business.

\* \* \*

## SECTION VIII – POLICY DEFINITIONS

A.   **Actual Cash Value:**  The following is added to any provision which uses the term Actual Cash Value:

Actual Cash Value is calculated as the amount it would cost to repair or replace Covered Property, at the time of loss or damage, with materials of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. Actual Cash Value applies to valuation of Covered Property regardless of whether that property has sustained partial or total loss or damage.

The Actual Cash Value of the lost or damaged property may be significantly less than its replacement cost.

\* \* \*

D.   **Building:**  Building is defined as a fully enclosed permanent structure with walls and a continuous roof.

\* \* \*

F.   **Collapse** means an abrupt falling down or caving in of a **building** or any part of a **building** with the result that the **building** or part of the **building** cannot be occupied for its current intended purpose.  The Collapse must be caused by or resulting from one or more of the following:

1. Building decay that is hidden from view, unless the presence of such decay is known to the Insured prior to collapse;

2. Insect or vermin damage that is hidden from view, unless the presence of such damage is known to the Insured prior to collapse;

3. Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of construction, remodeling or renovation.

4. Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

   a. A cause of loss listed in F.1. or F.2;

   b. One or more of the **Defined Causes of Loss;**

   c. Breakage of building glass;

   d. Weight of people or personal property; or

   e. Weight of rain or snow or ice that collects on a roof.

5. **Catastrophic Ground Cover Collapse.**

* * *

I. **Defined Cause of Loss** means Fire, Lightning, **Explosion, Windstorm or Hail, Smoke, Aircraft or Vehicle Impact, Riot, Strike or Civil Commotion, Vandalism and Malicious Mischief,** or **Leakage From Fire Protection Equipment**.

J. **Earth Movement** means any natural or manmade:

1. Earthquake, including any earth sinking, rising or shifting related to such event;

2. Landslide, including any earch sinking, rising or shifting related to such event;

3. Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

4. Earth sinking, rising or shifting, including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty.   Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface

5. Shocks, tremors, mudslide, mud flow, rock falls, volcanic eruption, **Sinkhole Loss,** subsidence or any other **Earth Movement.**

* * *

R.     **Fungus, Mold(s), Mildew, Spores Or Yeast:**

Fungus includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including mold(s), rusts, mildews, smuts and mushrooms.

Mold includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce mold(s).

Spore means any dormant or reproductive body produced by or arising or emanating out of any fungus, mold(s), mildew, plants, organisms or microorganisms.

* * *

T.     **Land** means land (except land for which values are reported and premiums are charged hereunder), including dikes, levees, and other surface containment structures. Surface containment structures are not land to a depth of six inches below such containment structures.

* * *

V.     **Location** means any building, yard, dock, wharf, pier or bulkhead or any group of the foregoing bounded on all sides by public streets, clear land space or open waterways, each not less than two hundred feet wide. Any bridge or tunnel crossing such street, space or waterway shall render such separation inoperative for the purpose of this definition.

* * *

FF.    **Total Insurable Values (TIV):** The Total Insurable Values shall include all Covered Property (Real & Personal Property) and Time Element values reported on the Statement of Values on file with Program Manager.

* * *

## FOURTH AFFIRMATIVE DEFENSE

The Plaintiff's claims are stated to be due to "collapse"; however, Plaintiff's claims must fail to the extent Plaintiff is unable to establish a loss due to "collapse" as defined by the Policy.

## FIFTH AFFIRMATIVE DEFENSE

Insurers submit that Plaintiff's claims must fail to the extent the claimed damage is due to a peril not covered by the Policy.

## SIXTH AFFIRMATIVE DEFENSE

Insurers submit that Plaintiff's claims must fail to the extent the loss is due to Earth Movement, a peril not insured under the Policy.

## SEVENTH AFFIRMATIVE DEFENSE

Insurers submit that Plaintiff's claims must fail to the extent the loss does not arise out of Ordinance or Law as defined by the Policy.

## EIGHTH AFFIRMATIVE DEFENSE

Insurers submit that Plaintiff's claims must fail to the extent the claim is for property not insured under the Policy.

## NINTH AFFIRMATIVE DEFENSE

Insurers submit that Plaintiff's claims must fail to the extent the time element provisions of the Policy are not sustained.

## TENTH AFFIRMATIVE DEFENSE

Insurers deny that the statutes apply; however, to the extent they do, Insurers, at all relevant times, acted in conformity with La.R.S. 22:1892 and 1973, as well as La. Civ. Code art. 1997.

## ELEVENTH AFFIRMATIVE DEFENSE

To the extent Plaintiff is able to establish a claim covered by the Policy, the claim is subject to the applicable limit, sublimit(s) and deductible(s) required by the Policy.

## TWELFTH AFFIRMATIVE DEFENSE

At all relevant times, Insurers acted with due regard to their insured(s) and acted as required by law and under the terms, conditions and limitations of the Policy.

## THIRTEENTH AFFIRMATIVE DEFENSE

Insurers reserve the right to amend their answer, including affirmative defenses raised therein.

**WHEREFORE**, Defendants, Certain Underwriters at Lloyd's, London Severally Subscribing to Policy Number AMR-66147 and HDI Global Specialty SE (collectively ("Insurers"), pray that their answer be deemed good and sufficient, and after due proceedings have been had, the claims against them be dismissed, with prejudice.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:   */s/ Virginia Y. Dodd*
   Virginia Y. Dodd, La. Bar Roll No. 25275
   Heather S. Duplantis, La. Bar Roll No. 30294
   Kevin W. Welsh, La. Bar 35380
   II City Plaza | 400 Convention Street, Suite 1100
   Baton Rouge, Louisiana 70802-5618
   Post Office Box 4412
   Baton Rouge, Louisiana 70821-4412
   Telephone: 225-346-0285
   Telecopier: 225-381-9197
   Email: ginger.dodd@phelps.com
      kevin.welsh@phelps.com


   ATTORNEYS FOR DEFENDANTS CERTAIN
   UNDERWRITERS AT LLOYDS', LONDON,
   SEVERALLY SUBSCRIBING TO POLICY
   NUMBER AMR-66147 AND HDI GLOBAL
   SPECIALTY SE

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing *Answer to Petition for Damages and Affirmative Defenses* has been served on this 4th day of December, 2020, on:

Plaintiff,
1025 Canal Street, LLC
Through their counsel of record:
Harold E. Weiser III
Weiser Law Firm, LLC
3801 Canal Street, Suite 205
New Orleans, Louisiana  70119

electronically through the Court's CM/ECF system.

*/s/ Virginia Y. Dodd*
Virginia Y. Dodd
La. Bar Roll No. 25275
ginger.dodd@phelps.com